The next matter on our calendar is Melody Bynum v. Maplebear Inc. Yes, Your Honor, good morning. My name is Mr. Abdul Hasan. I'm counsel for the Plaintiff Appellant, Ms. Melody Bynum. Your Honors, the district court order compelling arbitration in this case and the other consolidated case should be reversed for several compelling reasons, the first of which we believe that the High Court precedent and this Court's decision in Cheeks that FLSA claims are non-arbitrable because they are inconsistent with the statute, especially in the context of the current jurisprudence and because we believe the intent of the statute was to preclude a mechanism such as arbitration, especially the arbitration we have in this case. The Supreme Court in Barrington has given us guidance on how to perform the analysis You're talking about the merits of it? Say what? You're talking about the merits? Yes, Your Honor. You're going to talk about jurisdiction? Because in terms of jurisdiction, the Supreme Court in Microsoft v. Baker distinguished that case from Procter & Gamble and said that Procter & Gamble does not involve neither a class action certification nor the sort of dismissal tactic at issue in Microsoft. That is equally true here and even more so. This is not about class certification and this is not a case where the party stipulated to dismissal with prejudice. Moreover, Who voluntarily agreed to dismiss? No, let's look at the High Court, what they said voluntarily means. Let's look at the facts in this case. Yes. Did your client voluntarily dismiss these claims? It is not voluntary if you oppose the underlying orders as the Supreme Court said in Procter & Gamble. Could you answer my question? The answer is no. Yes or no? The answer is no. He didn't voluntarily dismiss? Not within the meaning of the law, Your Honor. Now, he did say that he would voluntarily dismiss. For me, the question is whether Judge Weinstein at that point did something different and said, you are not going to go to arbitration and I'm not going to push the arbitrator to have to make a decision. And at that point, removed the stay and decided on his own to dismiss. It really is a question of what it was that Weinstein did. And it may be that you win, not because of the arguments you are making, but because the district court did not accept the voluntary dismissal, but gave an involuntary action, which might be final. Judge Weinstein said, in light of the plaintiff's repeatedly stated intention to abandon arbitration and seek a dismissal on the merits, with the understanding that this may lead to the loss of her claims, the court is left with no alternative but dismissal. Yes, but that is not fully accurate. That is what the judge said. No, I know what the judge said. But that is from the decision below. That is correct, but the decision below is not accurate and that is why we are here. And it may be accurate to a large extent. It might be a play on words. What we did is that we refused to go to arbitration. And the judge, we clarified in the record around 152, 153, the judge said, well, is it true that you don't want to go forward in this case as well, in this court? We said, no, Your Honor, we don't want to go to arbitration. We want to go forward in this court. Let me ask you a different question. Suppose on the merits, which you had started to argue, in the companion case, we were to decide for you, would we in this case remand to Judge Weinstein to reconsider the whole thing, if there isn't jurisdiction now, but remand to Judge Weinstein to decide in the light of what has happened in the other case in the interest of justice? Your Honor, as a matter of appellate craft, Your Honor, that's a textbook tool that judges use in appellate courts and you would be perfectly within your authority and rights to do that. It might be wise as well. Go ahead. I didn't hear what you said, Your Honor. No, I was just saying we certainly do it in civil cases and I've been told that we sometimes even do it in criminal cases. Yes, Your Honor, and I think that would be a good approach because there are also some other cases pending here with the same type of situation involving the same parties and you might want to decide that one in plaintiff's favor and remand the rest for determination in light of that decision, but I would say look at Procter & Gamble, look at footnote 11. When everyone reads the top of the decision, they don't go down to the bottom and read footnote 11 in Baker v. Microsoft when the court said, and remember, the dissent is not binding, but their understanding of the majority's opinion is very critical in Microsoft. Now let me ask you another way. If we were to decide instead on the merits in the other case against you, we are able to assume jurisdiction arguendo in this case because it isn't a constitutional bar to jurisdiction so that either way the issue ultimately of jurisdiction does not become that important because if we rule for you on the merits in the other case, then we can send it back and if we rule against you on the merits, we can assume jurisdiction in this case arguendo and deal with it. I don't have any objections to that. You've reserved three minutes for rebuttal. Thank you. Counsel for Maple Bear. Can I say that Maple Bear is such a cuddly name, but this contract is really not cuddly. May it please the court, Julia Allen on behalf of Maple Bear doing business as Instacart. There are three points I'd like to address in response, the first being what the court raised. Ms. Bynum voluntarily dismissed her claims and as a result this appeal should be dismissed. Second, FLSA claims are arbitrable as a matter of law. Third, the remaining issues that Ms. Bynum raised on appeal for the first time have been waived, but even if they were considered, they also fail as a matter of law. Addressing first the jurisdictional issue, because Bynum voluntarily dismissed her claims, this appeal should be dismissed. The teachings of the Supreme Court in Microsoft v. Baker are instructive. In Baker, the Supreme Court held that a plaintiff cannot unilaterally transform an unappealable interlocutory order into a final judgment by dismissing her claims with prejudice. The Supreme Court reasoned that the final judgment rule codified in Section 1291 preserves the proper balance between trial and appellate courts, and that Congress authorized the Supreme Court in the Rules Enabling Act to provide for appellate review of interlocutory orders not covered by statute, but Baker is clear that those changes are to come from rulemaking, not judicial decisions in particular controversies or inventive litigation ploys. As a result here, Bynum's dismissal tactic, seeking to convert the unappealable interlocutory order compelling arbitration into a final appealable order cannot succeed, especially where here Congress has clearly stated in Section 16b3 that an appeal may not be taken from an order compelling arbitration. The record is here clear that Bynum attempted the exact type of inventive litigation ploy rejected in Baker because before dismissing Bynum's claims pursuant to Rule 41a2, Judge Weinstein held an evidentiary hearing, during which he confirmed with both Bynum and her counsel that she did not want to go forward with her claims, which counsel confirmed on the record was designed to permit Bynum to appeal the order compelling arbitration and then litigate her claim in court if she prevailed on appeal. That's the very thing that they prohibited in Microsoft? Yes, Your Honor. That dismissal tactic undermines the final judgment rule that's codified in Section 1291, as well as Congress's clear mandate in Section 16 of the FAA, and thus Bynum's appeal should be dismissed for the same reasons as in Baker. The Baker decision is also consistent with the general rule in this court, and in this circuit that an appeal from a judgment entered upon a voluntary dismissal with prejudice does not bring up for review any matters voluntarily dismissed. That is because a plaintiff who seeks and obtains dismissal of a claim is presumed to have obtained that which she sought. In sum, Bynum cannot voluntarily dismiss her case in order to manufacture finality and avoid Section 16b3's clear mandate prohibiting the appeal of orders compelling arbitration. Bynum received what she sought through her voluntary dismissal, and thus her appeal should be dismissed. To my second point, the law is clear that FLSA claims are arbitrable. As the district court recognized in the order compelling arbitration, the decisions of the Supreme Court, as well as courts both within and outside this circuit The Supreme Court has never ruled directly on this. The older Supreme Court cases like Barantine, which is not directly in point but is certainly relevant in Ganji, suggests a special treatment for FLSA and arbitration. Recently, the Supreme Court has been going in a very different direction, and there's no doubt that they're going in a different direction, and that's what the other circuits who have gone that way, they've presaged what the Supreme Court, they thought the Supreme Court would be doing, but we're not bound to go where the Supreme Court might go if we think that's wrong, are we? Your Honor, I would first address some of the Supreme Court cases that you mentioned, and Ms. Bynum relies heavily on the Barantine case, but that case addressed an entirely different issue. I'm not saying it is binding. You're saying the law is clear, and my argument is with that. The Supreme Court has not ruled on this issue, and the earlier cases tended in a different direction. They're not binding either, but they tended in a different direction. Two circuits have taken where the Supreme Court seems to be going now and decided that issue, but those circuits are not binding on us, so the issue is an open one before us, so don't tell us it's settled. Tell us why we should decide that way. Yes, Your Honor. The earlier Supreme Court decisions that you mentioned addressed the concerns about waiver of the substantive right provided for under the FLSA. Here it relates to the forum in which the FLSA claims will be resolved, and so as a result, as the Court reasoned in Gilmore, by agreeing to subject FLSA claims to arbitration, the party does not forego substantive rights, but instead agrees to their resolution in an arbitral rather than a judicial forum. And Gilmore is also instructive in its consideration of ADA claims, and the Adkins Court, the Fourth Circuit, explained the reasoning, that being that the Supreme Court in Gilmore held that ADA claims may be compelled to arbitrate or, I apologize, that ADA claims may be compelled to arbitration and explained that by agreeing or, I apologize, the Adkins Court explained that the plaintiff similarly sought to challenge or, I apologize, the Fourth Circuit explained the FLSA's remedial purposes and enforcement scheme are very similar to that of the Age Discrimination and Employment Act. Are they? I mean, that's the question. Is there something so special about FLSA claims that they are different from ADA claims? Adkins said no. The Supreme Court dealt with ADA claims. So the question is, is there something special about FLSA claims so that Congress did not want them to be subject to a judicial rather than an arbitration? And our answer is no, and that's because it's Bynum's burden to suggest there is, and that's based on the text, the legislative history, and any inherent conflict between the FLSA and the FAA. And she has not pointed to anything of that type of precedent here. And that's because, as the Fourth Circuit reasoned in Adkins, Finish your thought. the FLSA's remedial purposes and enforcement scheme are very similar to that of the Age Discrimination and Employment Act. In fact, a statute that the Supreme Court has already concluded does not preempt the FAA. Not only are the FLA's purposes broadly remedial in the same sense as the ADA, but the ADA actually incorporates large sections of the FLSA's enforcement structure. Thank you very much. Thank you. Mr. Hassan, you have three minutes. Yes, Your Honor, and I think that's the crux of the issue, whether or not the FLSA, as you pointed out in Cheeks, and I was the attorney in Cheeks, and you rule against me in that case, but I agree with you now, Your Honor, that the FLSA You agree now with Cheeks? Yes, Your Honor. I'm a big believer. The question is whether she still agrees with Cheeks. Well, there's good reason to. You know why? Because this Court didn't say anything new in Cheeks. This Court merely reiterated what the High Court had said in the 1940s in Brooklyn Savings Bank and Gangee, and what Barrentine said, Barrentine relied on those very cases. And when this Court declared that the FLSA is a uniquely protective statute, different from the antitrust statutes, the age discrimination statutes, it meant that, and it's true. There's a reason why the district judges are conducting fairness hearings in FLSA cases, but not in age discrimination cases. We don't have to rely on the Fourth Circuit. We're in the Second Circuit. We have to follow the law of the circuit. Moreover, this Court's decision in Cheeks is based on the Supreme Court's decisions. When it said what? Because of an inherent inequality of bargaining power, we cannot allow the employer and employee to waive FLSA rights privately. And what we're doing here with an arbitration agreement, as the Court said in Gilmer, an arbitration agreement is a waiver of judicial remedies for the statute at issue. Yeah, but is it a waiver of judicial remedy, or is it a waiver of rights? And the opposing counsel said you can waive under the FLSA the remedy, but even though you can't waive rights. So that's the core of it. And let me answer that. The Supreme Court in Barrington answered that question, because the Court said that you can't waive, let's say, for example, an obvious one, minimum wage and overtime. And the Court said if you allow arbitration for a whole litany of reasons, arbitration might result in the loss of overtime and minimum wage rights, or it may not. But in Barrington, the FAA didn't apply, and why the NLRB, which is favorable to arbitration, it's not as strong as the FAA. Well, guess what? There's even more reasons outside of the union context. For example, let me give you one reason. In both the union context and outside the union context, arbitration is based on what? The contract, the agreement of the parties. The FAA, more than the MLRA and the NLRA, requires that. But under the FLSA, it's the complete opposite. You can't give people private ability to waive FLSA rights, either directly or indirectly. Judge Friendly famously said you can't, estoppel doesn't apply, because this is an area in which Congress has precluded waiver by estoppel, by agreement, by conduct, wherever. So when you have arbitration with costs, venue provisions, go to California, pay $600 an hour, pay $25,000 to fight them in court to get rid of them, that's a deterrence. This court in LIAC just a few weeks ago, Long Island Aid Scaler, said the mere presence of these provisions will deter people from exercising their rights under the statute. So two things. First of all, because of the inequality of bargaining power, you're not even capable of waiving so-called procedural rights. Secondly, the arbitration will result in so-called substantive rights because of the cost, financial and other burdens, the standard of review and appeal and so on that the court recognized in Barantine, it will also result in the waiver or the burden or the lack of ability to vindicate those rights in an arbitral forum. Thank you. Thank you both for reserved discussion.